UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------x
KERRY FELMINE,

               Plaintiff,

  -against-                      **MEMORANDUM & ORDER**
                                     13-CV-2641 (FB) (CLP)
SERVICE STAR,

               Defendant.
----------------------------------------------------x

*Appearances:*
For the Plaintiff:                        *For the Defendants:*
OKECHUKWU VALENTINE NNEBE     PETER K. LEDWITH
Nnebe & Associates, P.C.               Ledwith & Atkinson
255 Livingtston Street                  14 St. James Place
3rd Floor                                     Lynbrook, NY 11563
Brooklyn, NY 11217

**BLOCK, Senior District Judge:**

      Kerry Felmine brought this action pursuant to Title VII of the 1964 Civil Rights Act and the Americans with Disabilities Act ("ADA") against Service Star, which provides cargo handling services to Lufthansa Cargo AG ("Lufthansa") at John F. Kennedy International Airport ("JFK Airport"). He alleges that Service Star subjected him to sexual harassment, retaliated against him for reporting the harassment to his supervisors, and discriminated against him because of a disability. Service Star moves for summary judgment on all of Felmine's claims. The motion is granted.

I

      Service Star employed Felmine as a cargo handling agent. Felmine alleges that

on July 23, 2011, Tony Permaul, a Lufthansa Lead Agent, assaulted him in a sexual manner.¹ Felmine testified in his deposition that Permaul:

> came from behind me when I was standing up towards the forklift and jammed me from behind. He kind of hugged me and put his two hands under my abs and pulled me this way, and he started whining and jamming on me, and checking on me and grinding on me.

Felmine Dep., 103:3-8. Felmine stated that he promptly reported Permaul's actions to a Lufthansa Supervisor, who stated that she would speak with Permaul and directed Felmine to Sean Conroy, his direct supervisor at Service Star.

Three days later, Permaul again assaulted Felmine in a similar manner. Subsequently, Felmine reported Permaul's actions to Conroy, who assured Felmine that he would take action. After speaking with a Lufthansa Cargo manager, Conroy reassigned Felmine to another area of the warehouse so he would not work in near Permaul. Felmine reported initial satisfaction with this accommodation; however, his coworkers convinced him that he would suffer negative ramifications for reporting a Lufthansa Cargo employee. On August 10, 2011, Felmine called Ruth Ann Baker, a Lufthansa Human Resources Manager, about this fear.

The next day, Baker contacted Conroy, and the two agreed to open a formal investigation into Permaul's conduct. Soon after, as a result of the investigation, Lufthansa Cargo reduced Permaul's pay, placed him on a probationary status,

---

¹ For the purposes of this motion, Service Star concedes that it acted with Lufthansa Cargo as joint employers of Permaul and Felmine.

mandated sexual-harassment training, and forbade him from serving as a Lead Agent for the duration of his probation.

On March 23, 2012, Felmine missed work due to severe knee pain, a flare-up of an injury from a 2009 automobile accident. He visited the doctor on March 27, who provided Felmine with a note that instructed him to rest his knee for at least 10 days. On March 28, Felmine met with Conroy at JFK Airport and surrendered his airport security pass; according to Conroy, Port Authority regulations required that employee passes be retained by the employer for all gaps in employment of unspecified duration. Ultimately, Felmine never returned to work for Service Star.

The parties disagree about why Felmine did not return to work. Felmine testified he believed that he was fired because Conroy took his pass and his attempts to return to work were ignored, while Service Star maintains that Felmine abandoned his employment because he did not attempt to return to work.

## II

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are material and in dispute when a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"A plaintiff seeking relief for sexual harassment may proceed under two

theories: 1) quid pro quo harassment; and 2) hostile work environment." *Torres v. Pisano*, 116 F.3d 625, 630 (2d Cir. 1997) (citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65 (1986)). Felmine advances both theories.

## A

To set out a prima facie claim of quid pro quo sexual harassment, Felmine must "present evidence that [he] was subject to unwelcome sexual conduct, and that [his] reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions or privileges of [his] employment." *Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir. 1994). But

> an employer may be vicariously liable for an employee's unlawful harassment *only* when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."

*Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2444 (2013) (emphasis added) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). The determination of whether the harasser was empowered to take tangible employment actions "can very often be resolved as a matter of law before trial." *Id.* at 2450. Service Star argues that Permaul was not so empowered.

As a Lead Agent, Permaul's responsibilities included coordinating truck movement, weighing and screening freight and placing it in a designated location,

4

overseeing loading work, and providing routine oversight and general directions to Service Star agents that worked in the same area of the warehouse. He had no authority to hire, fire, evaluate, or discipline Service Star employees, or determine their compensation. Accordingly, he was not empowered to take tangible employment actions, and Felmine cannot sustain a claim of quid pro quo sexual harassment against Service Star. *See Ellerth*, 524 U.S. at 761 ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

Felmine argues nonetheless that Permaul made threats to fire him, despite not having authority to do so. But such threats are irrelevant to Service Star's liability for Permaul's conduct, because Service Star did not "empower" Permaul to effectuate any threat he may have made. *Vance*, 133 S. Ct. at 2443.

Accordingly, Felmine cannot maintain a claim for quid pro quo sexual harassment.

## B

With respect to his hostile-work-environment claim, Felmine must prove that his workplace was "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Mormol v. Costco*

5

*Wholesale Corp.*, 364 F.3d 54, 59 (2d Cir. 2004) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). When the harassment is perpetuated by a non-supervisory co-worker, as in the present case, an "'employer will be held liable only for its own negligence,' and the plaintiff must demonstrate that the employer 'failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action.'" *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013) (quoting *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009)).

Service Star asserts that Felmine was provided a reasonable avenue to complain and took appropriate remedial action.[2] The Court agrees. After the second assault—which occurred only three days after the first assault—Felmine reported the conduct to Conroy, who immediately contacted Permaul's Lufthansa supervisor and arranged for Felmine and Permaul to be assigned to different areas of the warehouse. When Felmine reported the assaults to Baker, she and Conroy opened an investigation into Permaul's conduct which resulted in Permaul's demotion and censure. Over the remaining eight months of Felmine's employment at Service Star, Permaul's assaultive behavior did not continue. This demonstrates not only that Service Star provided a reasonable avenue for Felmine to complain, *see Duch*, 588 F.3d at 762-63 ("[T]he relevant inquiry is not whether a *particular* avenue of complaint was

---

[2] Felmine does respond to this argument in his opposition papers.

6

effectively blocked but, rather, whether defendants provided *no* reasonable avenue of complaint." (internal quotation marks omitted)), but also that it promptly took appropriate action that effectively addressed the problem, *Summa,* 708 F.3d at 125 (holding hostile work environment could not be imputed to employer where response to bad conduct was prompt and effective).

Accordingly, Service Star is entitled to summary judgment on Felmine's hostile-work-environment claim.

### III

Felmine also advances a claim under Title VII for unlawful retaliation. To establish this claim, Felmine must show that (1) he engaged "in an activity protected by Title VII," (2) his "participation was known to [Service Star]," (3) Service Star "thereafter subjected [him] to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). Service Star argues that Felmine was not subjected to an adverse employment action and that even if he had been, there is no evidence demonstrating a causal link between it and any protected activity.

For the purposes of a Title VII retaliation claim, adverse employment actions must be "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*

*v. White*, 548 U.S. 53, 57 (2006). Felmine argues that various insults that Permaul directed at him after he reported Permaul's conduct and the fact that he was scheduled to work with Permaul numerous times over the final eight months of his employment constituted adverse employment actions. However, the Supreme Court has made clear that "petty slights or minor annoyances," such as what Felmine alleges, are not covered under Title VII's retaliation provision. *Id.* at 68.

Felmine also alleges that Conroy retaliated against him by deliberately delaying the renewal of his Port Authority pass, citing Baker's deposition transcript and a report prepared by Conroy as support for the allegation. However, neither the deposition nor the report support an inference that Conroy actually delayed in renewing the pass. This evidence indicates that Felmine was concerned that Conroy would delay renewing Felmine's pass because Felmine's coworkers convinced him that that was something about which he should have been concerned. However, in Conroy's report that Felmine cites, Conroy specifically states that Felmine's concerns were based on "false" information. Pltf's Ex. 11.

In addition, Felmine asserts, without further elaboration: "Ultimately, Plaintiff was terminated." Pltf's Opp. at 23. Indeed, if Felmine was terminated *because* he reported Permaul's conduct, he would have a valid retaliation claim. But Felmine has not adduced any evidence indicating a causal link between his reports of Permaul's conduct and his alleged termination. And while the Second Circuit has not drawn a

8

"bright line" as to when temporal proximity alone can support an inference of causation, *Gorman-Bakos v. Cornell Co-op Ext. of Schenectady Cnty.*, 252 F.3d 545, 554-55 (2d Cir. 2001), Felmine does not explain how the eight-month gap between his complaints and the end of his employment at Service Star demonstrates a causal link. Accordingly, Felmine's retaliation claim fails.

## IV

Lastly, Felmine asserts that he was discriminated on the basis of his knee injury in violation of the ADA. To establish his claim of discriminatory discharge, Felmine must show that (a) Service Star is subject to the ADA, (b) that he "suffers from a disability within the meaning of the ADA," (c) that he could "perform his job with or without reasonable accommodation," (d) and that he "was fired because of his disability." *Ryan v. Grae and Rybicki, P.C.*, 135 F.3d 867, 869-70 (2d Cir. 1998). Service Star argues that it is entitled to summary judgment because Felmine did not suffer from a disability.

An individual is disabled within the meaning of the ADA when he or she has "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Widomski v. State Univ. of N.Y. at Orange*, 748 F.3d 471, 474 (2d Cir. 2014) (quoting 42 U.S.C. § 12102(1)). The ADA provides a non-exclusive list of major life activities, including: "caring for oneself,

performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

Although Felmine complained of pain and submitted a doctor's note indicating that he should rest his knee for at least ten days, he does not identify a major life activity that he could not perform. He does not point to any evidence indicating his knee injury limited him from engaging in any major life activities, or that Service Star perceived him as being so limited. Moreover, the fact that Felmine was instructed by his doctor to rest his knee for ten days does not mean that he has a disability resulting in coverage under the ADA. *See Adams v. Citizens Advice Bureau*, 187 F.3d 315, 316-17 (2d Cir. 1999) (no ADA coverage despite being unable to work for three and one-half months due to temporary disability).

Accordingly, Felmine is not disabled under the ADA and cannot sustain his claim against Service Star.

V

For the foregoing reasons, Service Star's motion for summary judgment is GRANTED.

**SO ORDERED.**

/s/ Frederic Block  
FREDERIC BLOCK  
Senior United States District Judge

Brooklyn, New York  
July 25, 2016